IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| RONALD JOHN CALZONE, | : | |
|     *Plaintiff-Appellant*, | : | |
| | : | |
| *v.* | : | No. 2:16-cv-4278 (NKL) |
| | : | |
| DONALD SUMMERS, ET AL., | : | |
|     *Defendants-Appellees.* | : | |
| ———————————— | : | |

**PLAINTIFF'S SUGGESTIONS IN REPLY REGARDING ATTORNEY'S FEES**

Defendant members of the Missouri Ethics Commission ("Commission" or "MEC") suggest that any attorneys' fees awarded by this Court to attorneys for Plaintiff Ronald John Calzone ("Mr. Calzone") should be greatly reduced from the amount requested. In doing so, the Commission largely recycles arguments presented in its opposition papers before the Eighth Circuit, arguments to which Mr. Calzone has already responded. *See* Reply Br. Concerning Attorney's Fees and Expenses, *Calzone v. Summers*, 942 F.3d 415 (8th Cir. 2019) (*en banc*) ("8th Cir. Fee Reply"). Mr. Calzone incorporates those documents and arguments into his suggestions in reply here. [1]

---

[1] At the outset, Mr. Calzone seeks to correct a mathematical error in the Commission's brief. The MEC contends that "[a]ccording to Plaintiff's Motion, he is seeking $51,570 for work performed in the district court," but Mr. Calzone's attorney affidavits arrive at a different number. ECF o. 59 at 2. Mr. Calzone's motion for fees before the Eighth Circuit stated that "[i]n total, Mr. Calzone requests fees in the amount of $221,191…for his attorneys' appellate work, Mr. Calzone requests $153,003.50." Mot. for Attorney's Fees and Expenses at 4. Subtracting the appellate request from the overall requested fee yields an amount of $68,187.50, not $51,570. The Commission appears to have reviewed only Mr. Allen Dickerson's declaration for attorneys' fees, which requested $51,570 for work done by attorneys employed by the Institute for Free Speech, while missing Mr. David Roland's declaration, which requested fees for work incurred by his organization, the Freedom Center of Missouri. Mr. Roland requests $16,617.50 for his district court work.

1

### I. Mr. Calzone's attorneys request reasonable billable rates and hours.

"The [MEC] does not contest that Plaintiff was the prevailing party," ECF No. 59 at 2, and properly concedes that Mr. Calzone "originally filed his verified complaint seeking relief under § 1983 as well as attorney fees and costs pursuant to 42 U.S.C. § 1988." *Id*. at 1. Before this Court, the Commission only contests the billable rates and hours that Mr. Calzone's attorneys have requested.[2]

Regarding the hourly rates, Mr. Calzone notes that the papers filed with the Court of Appeals include not only declarations from Mr. Dickerson and Mr. Roland regarding the reasonableness of their rates, but also a declaration from Mr. Charles Hatfield, "an experienced and respected Jefferson City attorney with experience in related litigation," 8th Cir. Fee Reply at 7, n.2, attesting to the same. Those documents speak for themselves, and are attached as Exhibits A and B.

In response, the Commission principally repeats its Eighth Circuit argument that *Trinity Lutheran Church of Columbia, Inc. v. Comer*, No. 2:13-4022, 2018 U.S. Dist. LEXIS 190824 (W.D. Mo. Nov. 7, 2018) (Laughrey, J.) ("*Trinity Lutheran*") and sundry other cases counsel against the rates that Mr. Calzone requests. But *Trinity Lutheran* specifically stated that "[t]he rates that may apply in…matters concerning 'campaign finance law' *are no doubt higher* than rates applied in First Amendment litigation—even complex First Amendment litigation—because of the different markets in [] 'specialized' areas of the law." *Id*. at *15, n.2 (emphasis supplied). As Mr. Calzone noted before the Court of Appeals, "campaign finance law is a close cousin to lobbyist

---

[2] While the Eighth Circuit did not award the full fees that Mr. Calzone requested for his attorneys' appellate work, it provided no reasoning for its decision.

disclosure regulations." 8th Cir. Fee Reply at 7. As just one example, *Citizens United v. Federal Election Commission*, 558 U.S. 310 (2010), relied on *United States v. Harriss*, 347 U.S. 612 (1954), the Supreme Court's only lobbying disclosure case, to uphold a federal campaign finance disclosure law. *Citizens United*, 558 U.S. at 369 ("And the Court has upheld registration and disclosure requirements on lobbyists, even though Congress has no power to ban lobbying itself") (citing *Harriss*). Indeed, both the Parties here and in the Eighth Circuit relied upon campaign finance decisions to make their case, a fact reflected in the final opinion. *Calzone*, 942 F.3d at 422-425 (citing *McCutcheon v. Fed. Election Comm'n*, 572 U.S. 185 (2014); *Citizens United v. Fed. Election Comm'n*, 558 U.S 310 (2010); *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334 (1995); *Fed. Election Comm'n v. Nat'l Conservative Political Action Comm.*, 470 U.S. 480 (1985); *Buckley v. Valeo*, 424 U.S. 1 (1976) (*per curiam*); *Minn. Citizens Concerned for Life, Inc. v. Swanson*, 692 F.3d 864 (8th Cir. 2012) (*en banc*)); ECF No. 2-1 at ii-iii (Plaintiff's table of authorities citing to *Buckley*, *Citizens United*, *Swanson*, and *SpeechNow.org v. Fed. Election Comm'n*, 599 F.3d 686 (D.C. Cir. 2010) (*en banc*)); ECF No. 33 at 4-8 (Plaintiff's reply brief citing to *SpeechNow.org*, *Nixon v. Shrink Mo. Gov't PAC*, 528 U.S. 377 (2000); *Fed. Election Comm'n v. Wis. Right to Life, Inc.*, 551 U.S. 449 (2007)). Mr. Calzone's requested rates, then, are reasonable and commensurate with the specifics of this case, which required specialized counsel with expertise in this particularized area of First Amendment law.

In addition, the Commission repeats its appellate argument that because Mr. Calzone only prevailed on his as-applied challenge, as opposed to his facial vagueness claim, "this Court should reduce the fee request by 50% at a minimum." ECF No. 59 at 7. Mr. Calzone's appellate papers thoroughly responded to this argument. 8th Cir. Reply Br. at 2-6. Plaintiff will only add that before this Court, Plaintiff filed two briefs, totaling 24 pages. In all, approximately four of those pages

3

dealt with Mr. Calzone's facial vagueness claim, including a mere two paragraphs in his reply brief. Indeed, those suggestions in reply make plain that Mr. Calzone's vagueness argument was a secondary one, as he concluded his vagueness argument by noting that such relief was unnecessary since "granting Mr. Calzone's as-applied claim would also resolve this case, while cleanly comporting with the untouched, six-decade old precedent of [*United States v.*] *Harriss*." ECF No. 33 at 8. Bluntly, the Commission's *ipse dixit* that "Plaintiff's facial challenge likely accounts for over 50% of the hours billed because it played the central role in this litigation" simply does not comport with the actual experience of any counsel involved in this case. ECF No. 59 at 7. Any haircut applied to Mr. Calzone's fee request, then, should comport with the fact that Plaintiff's as-applied challenge was always his central contention, represented the bulk of his arguments before this Court, and accordingly accounted for a substantial majority of his attorneys' time.

## CONCLUSION

Mr. Calzone's request for attorney's fees ought to be granted.

Respectfully submitted,

*David Roland*
_____
David E. Roland Mo. Bar #60548
FREEDOM CENTER OF MISSOURI
P.O. Box 693
Mexico, MO 65265
Phone: (573) 567-0307
Fax:    (573) 562-6122
Email:  dave@mofreedom.org

Allen Dickerson*
Zac Morgan*
Owen Yeates*
INSTITUTE FOR FREE SPEECH
1150 Connecticut Ave., N.W.

4

|  |  |
|---|---|
| * Admitted *pro hac vice* | Suite 801<br>Washington, D.C. 20036<br>Phone: (202) 301-9000<br>Fax : (202) 301-3399<br>Email: adickerson@ifs.org<br>*Counsel for Plaintiff* |

Date: January 30, 2020